THOMAS OZUK, a Minor, by his Mother and Next Friend, Plaintiff-Appellant, v. RIVER GROVE BOARD OF EDUCATION, Defendant-Appellee.

First District (2nd Division)    No. 1—95—2844

Opinion filed May 14, 1996.

Steven W. Jacobson, of Jacobson & Sorkin, Ltd., of Chicago, for appellant.

Peter A. Tomoras and David A. Korn, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

At issue in this appeal is whether the circuit court properly dismissed plaintiff Thomas Ozuk's premises liability action against defendant River Grove Board of Education. For the reasons that follow, we affirm in part and remand with directions.

In October 1994, plaintiff, who was 13 years of age and approximately 6 feet 1 inch tall at the time of his injury, filed a premises liability action which was dismissed. In January 1995, he filed an amended complaint in which he alleged that he slipped, fell, and sustained injuries while running laps in gym class. He claimed that he fell because volleyball nets were placed in the gymnasium so that the students had to run underneath them and because the floor was in a warped, uneven, and defective condition. Count I alleged that defendant was negligent in breaching its duty of ordinary care, and count II alternatively relied upon a theory of willful and wanton conduct.

Pursuant to section 2—615 of the Civil Practice Law (735 ILCS 5/2—615 (West 1992)), defendant moved to dismiss the amended com-

plaint. The motion was granted. When plaintiff chose not to replead, the action was dismissed with prejudice, and plaintiff appealed.

■ Plaintiff first asserts that the circuit court erred in dismissing count I of his amended complaint. We note that although defendant brought the motion to dismiss count I pursuant to section 2—615, the motion asserted that plaintiff's claim was barred by the State Lawsuit Immunity Act (the Act) (745 ILCS 5/0.01 *et seq.* (West 1992)). That defense is an affirmative matter extraneous to the complaint and thus properly may be brought pursuant to section 2—619 of the Civil Practice Law (735 ILCS 5/2—619 (West 1992)). Because defendant relied upon extraneous information, we treat the motion to dismiss count I as if brought under section 2—619.

The purpose of a motion to dismiss under section 2—619 is to dispose of issues of law and easily proved issues of fact at the outset of a case. *Zedella v. Gibson*, 165 Ill. 2d 181, 185, 650 N.E.2d 1000 (1995). In ruling on a section 2—619 motion to dismiss, a court may consider pleadings, depositions, and affidavits. *Zedella*, 165 Ill. 2d at 185. A reviewing court will determine *de novo* the propriety of the granting of a motion to dismiss. *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50 (1993), *appeal denied*, 152 Ill. 2d 581, 622 N.E.2d 1229 (1993). The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993).

■ Section 3—106 of the Act provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property *intended or permitted to be used for recreational purposes*, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Emphasis added.) 745 ILCS 10/3—106 (West 1992).

Although defendant claims that the gymnasium was property within the meaning of section 3—106, plaintiff maintains that it was educational, not recreational, in nature and therefore did not fall within its ambit. 745 ILCS 10/3—106 (West 1992). If, as plaintiff asserts, the school gymnasium was not a recreational facility within the meaning of section 3—106, then section 3—102 of the Act would apply: a local public entity is liable to intended and permitted users of its property, who use the property in a reasonably foreseeable manner and are injured by an unsafe condition, where it has actual

or constructive notice of the condition that is not reasonably safe and it breaches its duty of ordinary care to maintain the property in a reasonably safe condition. 745 ILCS 10/3—102 (West 1992). Thus, if the gymnasium was a recreational facility, plaintiff must prove willful and wanton conduct and count I of his complaint, alleging ordinary negligence, was properly dismissed. On the other hand, if the gymnasium was not a recreational facility, he must prove only ordinary negligence and the dismissal was error and must be reversed. See 745 ILCS 10/3—102, 3—106 (West 1992). The crux of the issue presented here, therefore, is whether the gymnasium is a recreational facility within the purview of section 3—106.

■ The purpose of section 3—106 is to encourage the development and maintenance of parks, playgrounds, and other recreational areas. *Annen v. Village of McNabb*, 192 Ill. App. 3d 711, 713, 548 N.E.2d 1383 (1990). Although the question of whether a school gymnasium is a recreational facility within the ambit of section 3—106 is one of first impression, Illinois courts have applied section 3—106 to school property such as an outdoor basketball court (*Oropeza v. Board of Education*, 238 Ill. App. 3d 399, 606 N.E.2d 482 (1992)), a commonly used sidewalk (*Ramos v. Waukegan Community Unit School District No. 60*, 188 Ill. App. 3d 1031, 544 N.E.2d 1302 (1989)), and a sidewalk that was adjacent to a grass playground and upon which children played at recess (*Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 384, 657 N.E.2d 887 (1995)).

In *Bubb*, the supreme court rejected a "dual-purpose property" test that had been used by the fourth appellate district to determine whether section 3—106 immunity applied. *Bubb*, 167 Ill. 2d at 376-77. The court held that the type of activity performed on the property is not significant; rather, immunity depends on the character of the property in question, *i.e.*, whether the property was intended or permitted to be used for recreational purposes. *Bubb*, 167 Ill. 2d at 379. "In determining the nature of public property, courts have therefore considered whether the property has been used for recreation in the past or whether recreation has been encouraged there." *Bubb*, 167 Ill. 2d at 382. In *Bubb*, recreational intent was suggested by the painting of lines on the concrete to allow school children to play the game "four-square" and by the principal's admission that school children were intended and permitted to play on the sidewalk. *Bubb*, 167 Ill. 2d at 382-83.

Recreation is defined as "refreshment of the strength and spirits after toil: DIVERSION, PLAY." Webster's Third New International Dictionary 1899 (1986). Play "suggests an opposition to work; it implies activity, often strenuous, but emphasizes the absence of any

aim other than amusement, diversion, or enjoyment." (Emphasis omitted.) Webster's Third New International Dictionary 1737 (1986). In contrast, physical education is defined as "education in methods designed to promote the development and care of the body and [usually] involving instruction in hygiene and systematic exercises and in various sports and games." Webster's Third New International Dictionary 1706 (1986). Thus, compulsory physical education and recreation have different aims: whereas the former seeks to instruct, the latter aspires merely to amuse. Accordingly, although some students may enjoy gym class, it cannot be said to be recreation.

■ Because public property may have more than one intended use (*Bubb*, 167 Ill. 2d at 383), however, the fact that the gymnasium was used for physical education is not dispositive of whether section 3—106 immunity applies. If the school gymnasium was encouraged, intended, or permitted to be used for recess, extracurricular events, or other recreational, noncompulsory activities, then section 3—106 would apply, provided that the recreational use was more than incidental. See *Bubb*, 167 Ill. 2d at 382. Because those facts were not developed in the circuit court, we would have to speculate to determine the issue. Accordingly, remand is appropriate for the limited purpose of developing facts related to the intended or permitted use of the gymnasium.

On remand, if the facts show that the gymnasium was used only for compulsory physical education, section 3—106 immunity would be inapplicable. If so, plaintiff must prove only ordinary negligence and count I was wrongly dismissed. On the other hand, if the facts show that the gymnasium was intended or permitted to be used for recreational purposes, section 3—106 would apply. If that is the case, plaintiff must prove wanton and willful conduct and count I was properly dismissed. For that reason, we address plaintiff's second contention, that the circuit court erred in dismissing, pursuant to section 2—615, count II of his amended complaint for failure to state a claim for willful and wanton conduct.

■ A circuit court should dismiss a complaint under section 2—615 only when it is apparent that no set of facts can be proved that will entitle a plaintiff to relief. *Zeitz v. Village of Glenview*, 227 Ill. App. 3d 891, 894-95, 592 N.E.2d 384 (1992), *appeal denied*, 146 Ill. 2d 654, 602 N.E.2d 479 (1992). Illinois is a fact-pleading state, and a pleader must state facts essential to his cause of action that reasonably inform the opposing party of the nature of his claim. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 423-24, 430 N.E.2d 976 (1981). To withstand a motion to dismiss, the characterization of acts as willful and wanton conduct is insufficient; rather, the misconduct must be

manifested by well-pleaded facts. *Oropeza*, 238 Ill. App. 3d at 403. A reviewing court will determine *de novo* whether the allegations of the complaint, with all well-pleaded facts taken as true, are sufficient to state a cause of action. *Toombs*, 245 Ill. App. 3d at 583.

■ For conduct to be willful or wanton, it must be committed intentionally or under circumstances exhibiting a reckless disregard for the safety of others. 745 ILCS 10/1—210 (West 1992); *O'Brien v. Township High School District 214*, 83 Ill. 2d 462, 469, 415 N.E.2d 1015 (1980). Willful and wanton conduct includes the failure to exercise ordinary care to prevent an injury after knowledge of an impending danger or a failure to discover danger when it could have been discovered through ordinary care. *O'Brien*, 83 Ill. 2d at 469.

Here, plaintiff alleged that defendant:

"a) wilfully and wantonly failed to properly supervise the activities of its students and pupils, and particularly of the minor plaintiff, when it knew or should have known of the dangerous and hazardous conditions created by said improper supervision;

b) wilfully and wantonly directed and instructed and/or allowed and permitted its students to engage in a running exercise when it knew or should have known that the gym floor was in a warped, uneven, and defective condition;

c) wilfully and wantonly directed and instructed and/or allowed and permitted its students to engage in a running exercise when it knew or should have known that volleyball nets were erected and in place so as to interfere with the running path of the students and pupils and creating a hazard to said students and pupils and particularly the minor plaintiff;

d) wilfully and wantonly failed to dismantle and remove the aforesaid volleyball nets from the gym and permitting its students and pupils to engage in a running exercise;

e) wilfully and wantonly failed to create and/or use an alternative running path for its students and pupils when it knew or should have known that the aforesaid defective gym floor and/or volleyball nets created a hazard for its students and pupils and particularly the minor plaintiff while engaged in a running exercise."

Plaintiff does not allege that defendant intended to harm him. Thus, assuming the allegations to be true for the purpose of review, we turn to the question of whether the foregoing alleges a reckless disregard for the safety of others.

In Illinois, plaintiffs have failed to state a claim for willful and wanton conduct where they have alleged that: the defendant failed to prohibit use of and repair a basketball court that contained visible trenches in the asphalt (*Oropeza*, 238 Ill. App. 3d at 403); a sidewalk

was cracked and uneven and in an unreasonably dangerous and hazardous condition but did not state facts showing why it was unreasonably dangerous or that the defendant knew or should have known of its condition (*Ramos*, 188 Ill. App. 3d at 1038); and the defendant designed football fields to be too close together, failed to mark the fields or warn students, and directed that younger and smaller students and older and bigger students play contact sports in immediately adjacent playing fields (*Ward v. Community Unit School District No. 220*, 243 Ill. App. 3d 968, 614 N.E.2d 102 (1993)).

In contrast, in *Scarano v. Town of Ela*, 166 Ill. App. 3d 184, 186, 520 N.E.2d 62 (1988), the plaintiff successfully pleaded willful and wanton conduct where he alleged that other children had fallen from a slide because of its defective condition and that the defendant knew of those incidents but failed to remedy the defects. Also, the plaintiff in *Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367, 539 N.E.2d 246 (1989), *appeal denied*, 127 Ill. 2d 612, 545 N.E.2d 105 (1989), stated a claim for willful and wanton conduct where the allegations showed that the defendant knowingly and recklessly failed to provide adequate supervision, instruction, protection, and matting under a rope ladder from which the plaintiff fell.

In two cases, the appellate court found that it was not against the manifest weight of the evidence for a jury to find willful and wanton conduct. In *Landers v. School District No. 203*, 66 Ill. App. 3d 78, 383 N.E.2d 645 (1978), the jury found willful and wanton conduct where a physical education instructor was aware that a student was obese, untrained, and fearful, and knew that if a child had insufficient arm strength, her weight could drop onto her neck, but nevertheless ignored those obvious dangers and directed the child to attempt a backward somersault maneuver, thereby causing serious injury. In *Bernesak v. Catholic Bishop of Chicago*, 87 Ill. App. 3d 681, 685, 409 N.E.2d 287 (1980), the court found that there was a sufficient basis for a jury finding of willful and wanton conduct where children were permitted to play "crack-the-whip," a game that the defendants knew to be risky.

In sum, willful and wanton conduct was found or sufficiently pleaded where a defendant knew of injuries resulting from defective equipment but failed to remedy the situation (*Scarano*), or where the defendant, ignoring an obvious danger, directed or permitted the plaintiff to engage in a risky activity, such as rope climbing (*Bowers*), a backward somersault maneuver (*Landers*), or "crack-the-whip" (*Bernesak*).

■ The instant case, however, is more analogous to those cases

where the complaint alleged an injury resulting from more mundane activities, such as touch football (*Ward*), basketball (*Oropeza*), or skipping rope (*Ramos*). In those cases, the appellate court found the allegations insufficient to state a claim for willful and wanton conduct, notwithstanding allegations concerning the defective condition of the playing surface. Here, plaintiff's allegations, accepted as true for the purpose of the motion, establish that the gymnasium floor was warped and uneven; he was directed to run laps; and volleyball nets were placed so that he had to run underneath them. Those allegations do not show that defendant ignored an obvious danger or otherwise showed a reckless disregard for the safety of others which rose to the level of willful and wanton conduct. Accordingly, we affirm the dismissal of count II of plaintiff's complaint.

The cause is remanded to the circuit court for proceedings to determine whether the gymnasium was intended or permitted to be used for recreational purposes.

Affirmed in part; remanded with directions.

HARTMAN, P.J., and BURKE, J., concur.